**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **LITA GOINGS** | ) | |
| 5907 KNOLLBROOK DRIVE, #T1 | ) | |
| HYATTSVILLE, MD 20783 | ) | |
|  | ) | |
| and | ) | |
|  | ) | |
| **MARGARET NELSON** | ) | |
| 5518 KAREN ELAINE DR., APT. 509 | ) | |
| NEW CARROLLTON, MD 20748 | ) | |
|  | ) | |
| Plaintiffs, | ) | |
|  | ) | |
| v. | ) | **Case No.** _____ |
|  | ) | |
| **THE BOARD OF TRUSTEES,** | ) | |
| **NATIONAL GALLERY OF ART** | ) | |
| 6th and Constitution, NW | ) | |
| Washington, DC 20565 | ) | |
|  | ) | |
| and | ) | |
|  | ) | |
| **KAYWIN FELDMAN, DIRECTOR,** | ) | |
| **NATIONAL GALLERY OF ART** | ) | |
| 6th and Constitution, NW | ) | |
| Washington, DC 20565 | ) | |
|  | ) | |
| Defendants. | ) | |
| _____ | ) | |

**COMPLAINT**

(Disability, Sex, and Age Discrimination in Federal Employment)

1.      For nearly fifteen years, Lita Goings and Margaret Nelson have worked at the

National Gallery of Art as security guards, or Gallery Protection Officers (GPO).  Both are

individuals with disabilities.  Ms. Goings has osteoarthritis in her knees and legs, and she has had

a left knee replacement.  Ms. Nelson has osteoarthritis and rheumatoid arthritis, which affect her

spine, back, hips, legs, and other joints.  For several years, the Gallery begrudgingly

1

accommodated both women by permitting them to work in the coat/bag check room, which enabled them to alternate between sitting and standing throughout the day.  However, in June 2018, the Gallery informed both Ms. Goings and Ms. Nelson that new employees called "Gallery Aides," nearly all of whom are decades younger than Plaintiffs, had been hired to work in the check room and that Plaintiffs would be assigned back to monitoring the museum's galleries. Since July 2018, both Ms. Goings and Ms. Nelson have worked on the museum floor, and the Gallery has repeatedly denied several requests for reasonable accommodations, including requests to return to the check room or to have a chair or stool to sit on occasionally while monitoring their assigned galleries.  Furthermore, the Gallery has permitted at least three male GPOs to continue with light duty assignments in the museum's auditorium; it has not permitted Ms. Goings or Ms. Nelson to rotate into this assignment.  Defendants' actions violate the Rehabilitation Act of 1973, 29 U.S.C. § 791 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and Plaintiffs now seeks relief for the injuries that they have suffered and continue to suffer.

## JURISDICTION, VENUE AND PARTIES

2.      This is an action under the Rehabilitation Act of 1973, Title VII of the Civil Rights Act of 1964, and the Age Discrimination in Employment Act challenging the National Gallery of Art's failure to accommodate Plaintiffs and disparate treatment on the basis of disability, sex, and age.  This Court has jurisdiction under 29 U.S.C. § 794a, 42 U.S.C. § 2000e-16(c), 29 U.S.C. § 633a(c) and under 28 U.S.C. §§ 1331, 1332, and 1343(a)(4).  Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because the events that gave rise to Plaintiff's claims occurred in this district.

3.     Plaintiffs Lita Goings and Margaret Nelson are both residents of the state of Maryland.  Ms. Goings is a fifty-nine-year-old woman with a disability.  Ms. Nelson is a sixty-five-year-old woman with a disability.

4.     Defendants, the Board of Trustees of the National Gallery of Art and Kaywin Feldman, Director of the National Gallery of Art ("the Gallery") are sued in their official capacity only.  The National Gallery of Art is an art museum located in Washington, DC.  It is a federally funded governmental institution that receives federal financial assistance.  The Gallery employs Plaintiffs and has more than 500 employees.

## FACTUAL BACKGROUND

5.     Plaintiffs Ms. Goings and Ms. Nelson were hired as GPOs in 2005 and 2006, respectively; both are GS-5 level employees.

6.     In 2007, Ms. Goings was diagnosed with osteoarthritis in her knees and legs.  She had three surgeries on her left knee between 2007 and 2009 before undergoing a total left knee replacement in 2011.  Ms. Goings experiences chronic, severe pain and fatigue as a result, and her primary care physician has instructed her to alternate between sitting and standing.  These conditions substantially limit her ability to walk, stand, climb, or engage in physical activity for prolonged periods of time.  These conditions also substantially limit Ms. Goings' ability to groom, feed, and otherwise care for her adult son, who suffered a stroke several years ago.  He lives with Ms. Goings, uses a wheelchair, and is paralyzed on the right side of his body.

7.     In 2007, Ms. Nelson sought treatment for joint pain.  She was subsequently diagnosed with osteoarthritis, spinal stenosis, and rheumatoid arthritis, affecting her back, spine, knees, and hips.  She had spinal surgery in 2015.  Ms. Nelson has also been treated for shoulder, neck, and hand joint pain since at least 2014.  She experiences chronic, severe pain and fatigue as

a result, and her primary care physician has instructed her to alternate between sitting and standing.  These conditions substantially limit her ability to walk, stand, climb, or engage in physical activity for prolonged periods of time.

8.      Performing checkroom duties is included in the GPO position description.

9.      Until July 2018, the Gallery had previously accommodated both Plaintiffs by assigning them to the check room, where they were responsible for checking articles of clothing, luggage, and other parcels from Gallery visitors.

10.      Ms. Goings was assigned to the checkroom intermittently between 2007 and 2011 and full-time between 2011 and July 2018.

11.      Ms. Nelson was assigned to the checkroom full-time between 2015 and July 2018.

12.      The Gallery has long shown hostility towards Ms. Goings and Ms. Nelson due to their disabilities.  For example, Gallery records show that as far back as 2015, the NGA attempted to remove Ms. Nelson's check room assignment because "she has been accommodated for a while" and one of her superiors, Major Kaylor, "decided they could not accommodate her any longer."   The records state that "we should start by denying request for continued accommodation…and then propose removal for inability to perform" but noted that the Gallery would need to "to conduct interactive process" before attempting to force Ms. Nelson out of her job.

13.      The Gallery also attempted to end Ms. Goings' check room accommodation for several years, with written records showing that as of 2016, the Gallery determined that Ms. Goings "is being accommodated in the checkrooms, but [Major Kaylor said] that can't continue."

14.     On June 21, 2018, both Ms. Goings and Ms. Nelson received a letter from Assistant Chief Genia Reaves notifying them of the "termination of your current accommodation" and informing them that they would be reassigned to different stationary posts throughout the Gallery.  Plaintiffs would be assigned to monitor three to four galleries at a time. The letter informed Plaintiffs that "Gallery Aides" would be hired to assume their checkroom duties, effective July 22, 2018.

15.     When Ms. Goings received the letter on June 21, 2018, she asked Assistant Chief Reaves whether she could remain in the check room.  Reaves told her that there was "no way." Ms. Nelson asked, in response to the letter, whether the male employees on light duty would have their assignments terminated.  Reaves responded that they would "later."

16.     The letter referenced a meeting to be held the next day with Captain Karen Perry and Miriam Berman, the Gallery's reasonable accommodation coordinator.  However, the Gallery did not offer any accommodations at this meeting.

17.     Since July 22, 2018, the Gallery has required Plaintiffs to monitor several galleries within the museum.

18.     The essential function of monitoring the galleries could be performed while sitting occasionally on a chair or stool.  The purpose of that essential function is to be able to observe patrons who are in the gallery, to make sure that they do not touch the art, and to answer patrons' questions.  Plaintiffs could perform this essential function while occasionally sitting on a chair or stool.

**The Gallery Has Denied Several Reasonable Accommodation Requests from Plaintiffs**

19.     On June 24, 2018, Ms. Goings wrote a letter in which she explained why she felt she was being singled out as an "older disabled woman."

20.     On July 30, 2018, Ms. Goings submitted a written request for reasonable accommodations, asking 1) to have a chair or stool so that she may periodically sit while monitoring her assigned galleries; 2) to be assigned to the East Building only (because it was a shorter walking distance for her from her MetroAccess location); 3) to be excused from relief assignments; and 4)  not to be assigned to galleries with marble floors.

21.     The same day that she submitted her reasonable accommodation request, GPO Lewis informed Ms. Goings that he overheard Captain Perry ask "what is Ms. Goings doing in the East Building?  Put her in the café lobby.  I am not going to accommodate her."  Ms. Goings was then reassigned to the West Building, despite having initially been assigned to work in the East Building that day.  In her Report of Investigation affidavit, Captain Perry did not deny making this comment, stating that "I did say something like that."

22.     On or around July 31, 2018, Ms. Goings followed up on one of these requests directly with Chief Mark Wallace.  She explained that she would like to be stationed in East Building of the Gallery because this is near the pick-up and drop-off location for MetroAccess, a door-to-door paratransit service offered to individuals with disabilities.  Ms. Goings explained to Chief Wallace that she had sometimes been left behind by MetroAccess drivers when she was stationed elsewhere within the Gallery because of how long it took her to reach her ride.  Chief Wallace refused this accommodation request, saying it was not possible for individuals to have a fixed assignment.  When Ms. Goings asked about several male GPOs who are stationed exclusively in the auditorium, he did not answer, instead telling her that "security is not the job for you if you have a disability."  In his Report of Investigation affidavit, Chief Wallace did not deny making such a comment, stating that "I don't recall my exact words but it was something to that effect."  Ms. Johanna Speight was witness to this comment.

23.     Chief Wallace also told Ms. Goings that the request for reasonable accommodations that she had submitted the previous day, specifically her requests to be stationed only in the East building and to be excused from relief assignments, would be denied.

24.     Chief Wallace was correct, as Captain Perry wrote Ms. Goings' a letter on August 6, 2018 denying her requests to be posted in the East Building and excused from relief assignments, as well as her request to sit periodically on a chair or stool while monitoring her assigned galleries.  The letter stated that it would only assign her to galleries without marble floors, however, this accommodation has not been consistently granted, as Ms. Goings has frequently been assigned to galleries with marble floors since August 6, 2018.

25.     These requested accommodations are all reasonable and all would enable Ms. Goings to perform the essential functions of her position.

26.     Ms. Nelson has made several requests for reasonable accommodations since her checkroom assignment was terminated.  During the June 22, 2018 meeting with Miriam Berman, the Gallery's reasonable accommodation coordinator, Captain Karen Perry, union representative Otis Johnson asked on Ms. Nelson's behalf if the Gallery could find a position comparable to the check room.  Captain Perry responded that the Gallery would not be able to accommodate her.

27.     On July 23, 2018, Ms. Nelson submitted a written request for reasonable accommodations, asking that the Gallery 1) place her in the east end of the West Building; 2) excuse her from relief assignments; and 3) not assign her to galleries with marble floors.

28.     On August 6, 2018, Captain Perry denied the first two requests but stated that Ms. Nelson would not be assigned to galleries with marble floors.  However, this accommodation has not been consistently granted, as Ms. Nelson has frequently been assigned to galleries with marble floors since August 6, 2018.

7

29.     On August 7, 2018, Ms. Nelson requested that she be permitted to use a chair or stool to sit on periodically while monitoring her assigned galleries.

30.     Captain Perry denied that request the very next day.

31.     These requested accommodations are all reasonable and all would enable Ms. Nelson to perform the essential functions of her position.

## The Gallery Has and Continues to Treat Male GPOs with Alleged Disabilities More Favorably than Female GPOs with Disabilities

32.     The Gallery has treated male GPOs who claim to suffer from disabilities and need accommodations far better than it has Plaintiffs.  The Gallery has permitted at least three male GPOs—GPO Stephen Williams, GPO Ramesh Malhotra, and GPO Albertus van den Bogaard—to remain on light duty in lieu of monitoring galleries.  All are assigned the museum's auditorium.  They remain on light duty assignment nearly one year after Plaintiffs had their checkroom assignment terminated.

33.     The Gallery is more accommodating to male GPOs than female GPOs.  For example, Mr. Malhotra has been in a "seated post" since at least 2012.  Mr. van den Bogaard is being accommodated despite the fact that the Gallery believes he "probably is not a qualified individual with a disability" and although employees must "be able to do the essential functions of the job…AOP gives them some flexibility by trying to be accommodating."

34.     This same flexibility has not been extended to Ms. Goings or Ms. Nelson, nor have they been provided the opportunity to rotate into this assignment as a reasonable accommodation.

**The Gallery Aides Who Replaced Plaintiffs are Significantly Younger Than Plaintiffs**

35.     The Gallery has hired at least seven Gallery Aides to replace Plaintiffs to work the museum's check rooms.

36.     Many of these Gallery Aides are decades younger than Plaintiffs, and nearly all are under the age of forty.

**The Gallery's Continued Denial of Reasonable Accommodations is Causing Plaintiffs Significant Harm**

37.     Ms. Nelson and Ms. Goings have been performing their jobs without reasonable accommodations because they cannot afford to be out of work.  However, this is having serious, negative effects on their health and is exacerbating their disabilities.

38.     On August 6, 2018, both Plaintiffs filed formal EEO complaints.

39.     On February 11, 2019, Plaintiffs contacted the Gallery through a letter from their attorneys.  The letter explained that, since the Report of Investigation into Plaintiffs' formal EEO complaints had been completed, they intended to file this lawsuit.  The letter enclosed declarations from Dr. Eric Marshall and Dr. Reema Jalali, the primary care physicians of Ms. Goings and Ms. Nelson, respectively.  In those declarations, the providers explained that, in their judgment, the Gallery's refusal to accommodate the Plaintiffs was having deleterious effects on their health and that Plaintiffs may soon be unable to work as a result.  Because of this, the letter asked for the Gallery to assign Plaintiffs back to the check room, place Plaintiffs on paid administrative leave, or temporarily grant Plaintiffs reasonable accommodations, without prejudice to whatever position it may take in this lawsuit.

40.     The Gallery has not provided these temporary accommodations.

41.     The Gallery has failed to engage in an interactive dialog to determine whether the accommodations that Plaintiffs have requested would be feasible, and it has failed in its affirmative obligation to accommodate Plaintiffs' disabling conditions.

42.     At the time they requested the reasonable accommodations referenced above, Plaintiffs were qualified individuals with disabilities who were capable of performing the essential functions of their GPO positions with reasonable accommodations.

43.     Plaintiffs repeatedly identified several different reasonable accommodations which would have permitted them to perform the essential functions of the job.

44.     The Gallery has not and cannot show that the requested accommodations would have amounted to an undue burden.

45.     By terminating their checkroom assignment, refusing to grant any further accommodations, and failing to engage in the interactive process, the Gallery has failed to reasonably accommodate Plaintiffs' disabilities.

46.     The Gallery's decision to remove Plaintiffs' checkroom assignment, refusal to grant any further accommodations, and failure to engage in the interactive process is also motivated, at least in part, by animus and/or stereotypes regarding persons with disabilities, and/or their impact on the workplace, and constitutes intentional disability discrimination.

47.     The Gallery's decision to remove Plaintiffs' checkroom assignment, refusal to grant any further accommodations, and failure to engage in the interactive process is also motivated, at least in part, by sex discrimination, as the Gallery has continued to permit at least three male GPOs to work light duty assignments nearly one year after terminating Plaintiff's assignment in the checkroom.

48.     The Gallery's decision to remove Plaintiffs' checkroom assignment, refusal to grant any further accommodations, and failure to engage in the interactive process is also motivated, at least in part, by age discrimination.  Nearly all Gallery Aides working the checkroom are under the age of forty.

49.     The Gallery's unlawful actions have caused Plaintiffs severe financial and emotional injuries, including the loss of salary and other benefits of employment, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.  The Gallery's continued refusal to accommodate Plaintiffs has also exacerbated their health conditions, worsening their pain and fatigue.

50.     The Gallery's unlawful actions were willful, malicious and/or taken in reckless disregard of Plaintiffs rights under the law.  These actions have caused Plaintiffs severe emotional distress, anxiety, pain, humiliation, loss of enjoyment of life, pecuniary and non-pecuniary losses.  They have also exacerbated both of their medical conditions, causing both Plaintiffs physical pain.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

51.     All prerequisites to bringing this action have been satisfied.  Plaintiffs timely contacted an EEO counselor, and each filed a formal complaint of discrimination.  More than 180 days have elapsed since the date that they filed their respective formal complaints.

## COUNT ONE
## DISABILITY DISCRIMINATION (Failure to Accommodate)

52.     All factual allegations of Paragraphs 1-51 are incorporated herein.

53.     Defendants have failed to accommodate Plaintiffs' disabilities in violation of the Rehabilitation Act of 1973.

## COUNT TWO
## INTENTIONAL DISABILITY DISCRIMINATION

54.     All factual allegations of Paragraphs 1-51 are incorporated herein.

55.     Defendants intentionally discriminated against Plaintiffs in violation of the

Rehabilitation Act by terminating their assignment in the check room and refusing to

accommodate them further.

## COUNT THREE
## SEX DISCRIMINATION

56.     All factual allegations of Paragraphs 1-51 are incorporated herein.

57.     Defendants have continued to accommodate several male GPOs but have refused

to do the same for Plaintiffs due to their sex, in violation of Title VII.

## COUNT FOUR
## AGE DISCRIMINATION

58.     All factual allegations of Paragraphs 1-51 are incorporated herein.

59.     Defendants hired significantly younger employees to replace Plaintiffs in the

check room due to their age, in violation of the Age Discrimination in Employment Act.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request that this Court award them:

1)     Enter a declaratory judgment finding that the foregoing actions of Defendants

violate Plaintiffs' rights under the Rehabilitation Act, Title VII, and the ADEA;

2)     Enter preliminary and permanent injunctions directing Defendants to take all

affirmative steps necessary to remedy the effects of the unlawful, discriminatory conduct

described herein and to prevent similar occurrences in the future;

3)      Award Plaintiffs full back pay, including applicable benefits, that they would

have earned but for Defendants' discrimination, and order the restoration of all leave and other

benefits lost as a result of Defendants' unlawful actions;

4)      Compensatory damages in an amount to be proved at trial, including

compensation for the pain, humiliation, emotional distress and loss of enjoyment of life that the

discrimination has caused Plaintiffs;

5)      Reasonable attorneys' fees and costs;

6)      Prejudgment interest on all monetary sums awarded;

7)      Such other relief as the Court deems just and equitable.

### JURY DEMAND

Plaintiffs requests trial by jury as to all issues in this case.


Date:  March 11, 2019                    */s/ Richard A. Salzman*
                                          Richard A. Salzman (DC Bar No. 422497)
                                          Julia T. Quinn (DC Bar No. 1031695)
                                          HELLER, HURON, CHERTKOF & SALZMAN
                                          1730 M Street, NW, Suite 412
                                          Washington, DC 20036
                                          Telephone: (202) 293-8090
                                          Fax: (202) 293-7110
                                          salzman@hellerhuron.com
                                          quinn@hellerhuron.com